# Syllabus

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kimberly K. Muschong

PEOPLE v WILKINS

Docket No. 167737. Argued on application for leave to appeal October 15, 2025. Decided July 22, 2026.

Freddie Wilkins, III, was charged in the 63rd District Court with carrying a concealed weapon in a vehicle, MCL 750.227. A Michigan State Police trooper pulled over defendant's vehicle for speeding; defendant was driving, and there was a passenger in the front seat. As the trooper approached the vehicle, he noticed the smell of marijuana from the open passenger-side window, but he did not see marijuana in plain view and neither defendant nor the passenger was smoking marijuana or appeared intoxicated. The trooper learned that defendant and the passenger were under the age of 21, and when initially questioned, both denied having marijuana. However, the passenger later admitted that she had some "shake," which the trooper understood to mean a small amount of marijuana, the possession of which in small amounts by a person under the age of 21 is a civil infraction under MCL 333.27965 of the Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq*. The trooper then searched the vehicle and found a firearm, which defendant admitted belonged to him.

At his preliminary examination, defendant challenged the vehicle search on Fourth Amendment grounds, but the district court, Sara J. Smolenski, J., bound him over on the charged offense. In the Kent Circuit Court, defendant moved to suppress the gun on the same grounds. The circuit court, Scott A. Noto, J., denied defendant's motion. Defendant filed an interlocutory application for leave to appeal in the Court of Appeals, which the Court of Appeals denied. Defendant sought leave to appeal, and the Supreme Court remanded the case for consideration as on leave granted. 513 Mich 1052 (2024). On remand, in an unpublished per curiam opinion issued September 5, 2024 (Docket No. 367209), the Court of Appeals, SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ., affirmed the circuit court's holding that the search of defendant's vehicle did not violate the Fourth Amendment. Defendant again sought leave to appeal in the Supreme Court, which directed and heard oral argument on whether to grant the application or take other action. ___ Mich ___; 18 NW3d 294 (2025).

In an opinion by Justice THOMAS, joined by Chief Justice CAVANAGH and Justices WELCH, BOLDEN, and HOOD, the Supreme Court, in lieu of granting leave to appeal, *held*:

The warrantless search of defendant's car was unlawful under the automobile exception to the Fourth Amendment's warrant requirement because the trooper did not have probable cause to believe there was a criminal amount of marijuana in the vehicle. MCL 333.27965(3)(a) and (b) provide that "a person under 21 years of age who possesses not more than 2.5 ounces of marihuana . . . is responsible for a civil infraction" for a first or second violation; MCL 333.27965(4) retains criminal penalties for possession and other activities involving larger amounts of marijuana. The people of Michigan demonstrated a reduced state interest in enforcement of laws prohibiting marijuana possession and use when they took the offense out of the realm of criminal law through enactment of the MRTMA by ballot initiative. Probable cause to believe only that a defendant is responsible for a civil infraction does not establish probable cause to conduct a warrantless search under the automobile exception. Instead, a police officer performing a warrantless search under the automobile exception must have probable cause to believe that contraband or evidence of a crime will be found in a particular place. Because the amount of marijuana present defines the distinction between a civil infraction and a crime, the officer must have probable cause to believe that a *criminal* amount of marijuana is present; substances prohibited only by civil law are not "contraband" for purposes of supporting a warrantless search of an automobile based on probable cause under the Fourth Amendment. Moreover, the smell of marijuana does not per se provide probable cause regarding possession of a criminal amount.

In this case, where the trooper had probable cause to believe that the vehicle contained a small amount of marijuana—i.e., that a civil infraction had occurred, but not that the vehicle contained evidence of a *crime*—this probable cause was insufficient to support a warrantless search under the automobile exception. That the trooper smelled marijuana was also insufficient, alone or combined with the passenger's statement indicating that she may have had a small amount of marijuana, to establish probable cause to believe that a criminal amount of marijuana was present in the car.

Court of Appeals judgment reversed; case remanded to the circuit court for further proceedings.

Justice WELCH, concurring, agreed with the majority's Fourth Amendment analysis and joined the majority opinion in full, but wrote separately to express that she would have decided the case under Article 1, § 11 of Michigan's 1963 Constitution rather than under federal law. Defendant preserved and asserted his claim that the trooper's actions violated his rights under Const 1963, art 1, § 11, and she would have reached those arguments. Because marijuana has remained illegal at the federal level, federal courts have not yet confronted the issues raised in this case, and Michigan's Constitution would have provided a simpler basis to reach a decision. Accordingly, rather than relying on federal law, Justice WELCH would have done as other state courts have done when grappling with the interplay of marijuana legalization (or decriminalization) and the automobile exception: she would have rendered a decision based on the state Constitution.

Justice ZAHRA, joined by Justice BERNSTEIN, dissenting, disagreed with the majority's conclusion that it was unlawful for the trooper to conduct a warrantless search under the automobile exception to the Fourth Amendment. Properly framed, the actual issue in this case is

whether the trooper could lawfully search defendant's vehicle under the automobile exception to the warrant requirement when he had probable cause to believe that marijuana contraband would be found in the vehicle, even if the amount in question turned out to be a noncriminal amount. This Court and the Supreme Court of the United States have consistently held that a law enforcement officer may search a vehicle under the automobile exception if the officer has probable cause to believe he will find contraband *or* evidence of a crime. An officer need not have probable cause as to the exact amount of marijuana contraband when no one in the vehicle can legally possess any amount of marijuana; further, the MRTMA provides for the forfeiture of marijuana possessed by any person under the age of 21, and the Supreme Court of the United States has included items subject to civil forfeiture within the meaning of "contraband" under the Fourth Amendment. Under the facts of this case, the trooper had probable cause to believe he would find marijuana *contraband* in the vehicle.

# OPINION

Chief Justice:
Megan K. Cavanagh

Justices:
Brian K. Zahra
Richard H. Bernstein
Elizabeth M. Welch
Kyra H. Bolden
Kimberly A. Thomas
Noah P. Hood

FILED July 22, 2026

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v                                                                No. 167737

FREDDIE WILKINS, III,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

THOMAS, J.

In this case, a state trooper pulled defendant Freddie Wilkins over, smelled marijuana coming from the vehicle, and learned that both defendant and the other vehicle occupant were under the age of 21. The trooper ordered defendant out of the car and searched him, but the trooper did not recover any contraband. After questioning, the vehicle's passenger said that she may have had a small amount of marijuana. The possession of a small amount of marijuana by a person under the age of 21 is, as of

December 6, 2018, a civil infraction in our state. MCL 333.27965. The trooper then searched the vehicle and found a concealed firearm but did not recover any marijuana. At issue is whether the trooper could conduct a warrantless search of the vehicle under the automobile exception. We hold that the search was unlawful.

The Fourth Amendment of the United States Constitution was adopted after a history of colonial authorities conducting abusive searches in service of proving minor or imagined offenses.[1] In light of that history and our subsequent development of the law of search and seizure, which recognizes a required balancing between the interests of the state and the individual, we cannot say that the warrantless search of an automobile premised on probable cause to believe a civil infraction has been committed is reasonable. The United States Supreme Court has not applied the automobile exception to the warrant requirement for civil infractions, and this Court has not done so, either. Although a civil infraction is still a violation of law, it is of lesser severity than a criminal infraction. And the people of this state demonstrated a reduced state interest in enforcement of laws prohibiting marijuana possession and use specifically by taking the offense out of the realm of criminal law by ballot initiative. This reduced governmental interest in detecting and punishing civil infractions does not overcome the individual's expectation of privacy in their vehicle under the Fourth Amendment, and the trooper here did not have probable cause concerning any criminal violation. Consequently, we reverse the judgment of our Court of Appeals affirming the denial of defendant's motion to suppress evidence.

---

[1] Defendant also raised a challenge under Article 1, § 11 of the 1963 Michigan Constitution. Because our constitutional provision is at least as protective as the Fourth Amendment, we need not resolve whether our state Constitution provides a more protective independent basis for our decision here.

## I. FACTS & PROCEDURAL HISTORY

The facts of this case are not in dispute. On January 16, 2023, a Michigan State Police trooper pulled over defendant's vehicle for speeding. Defendant was driving, and there was another person in the front passenger seat. As the trooper approached the passenger side, he saw that the front passenger window was down, and he noticed the smell of marijuana. On cross-examination, the trooper said that "it didn't smell like [defendant] had just smoked it[.]"[2] The trooper did not see any marijuana in plain view, and he did not see any signs that either the defendant or the passenger was intoxicated or smoking marijuana.

Upon reaching the vehicle window, the trooper took the licenses of both occupants and learned that they were under the age of 21. The trooper then went back to his vehicle to request backup. Once the backup arrived, the trooper returned to defendant's vehicle and asked the occupants whether they had marijuana. They denied that they did. He asked defendant to step out of the vehicle and searched him.

Finding nothing on defendant, the trooper ordered the passenger out of the vehicle and questioned her. The passenger said she had "some shake," which the trooper

---

[2] On direct examination, the officer agreed that he "know[s] what marijuana, both fresh and burnt, smells like[.]" On cross-examination, he had the following exchange with defense counsel:

> *Q.* Okay. So was that the smell of fresh marijuana or burnt marijuana?
>
> *A.* It smelled like marijuana. It wasn't—well, from my experience people often smoke in their cars. I mean, it could be minutes, it could be hours. I mean, it didn't smell like he had just smoked it, it just smelled like marijuana.

understood to mean a "small amount of marijuana." In light of that admission, the trooper decided to search the vehicle. During the search, the trooper discovered a backpack on the floor in front of the passenger seat. Inside the backpack, the trooper found empty ziplock cellophane packages and a loaded semiautomatic pistol with an extended magazine. Defendant admitted that the pistol was his.

Defendant was charged with carrying a concealed weapon in a vehicle. MCL 750.227. He challenged the search of the vehicle on Fourth Amendment grounds at his preliminary examination, but the district court bound him over on the charge. He again raised the issue before the circuit court in a motion to suppress. The circuit court denied defendant's motion, and defendant filed an interlocutory application for leave to appeal in our Court of Appeals. The Court of Appeals denied the application. *People v Wilkins*, unpublished order of the Court of Appeals, entered December 11, 2023 (Docket No. 367209). This Court subsequently remanded the case to the Court of Appeals to consider the appeal as on leave granted. *People v Wilkins*, 513 Mich 1052 (2024); see also MCR 7.305(I)(1).

On remand, the Court of Appeals affirmed the circuit court's holding that the search of defendant's vehicle did not violate the Fourth Amendment. See generally *People v Wilkins*, unpublished per curiam opinion of the Court of Appeals, issued September 5, 2024 (Docket No. 367209). Defendant again sought leave to appeal in this Court, and we ordered oral argument on the application and asked the parties to address:

> (1) whether the search of the defendant's person by Trooper [James] Tomkins exceeded the permissible scope of *Terry v Ohio*, 392 US 1, 21, 30-31[; 88 S Ct 1868; 20 L Ed 2d 889] (1968); (2) if so, whether the discovery of the recovered weapon was causally connected to the search of the defendant's person; and (3) whether the search of the defendant's vehicle

4

was permissible under the automobile exception to the warrant requirement, where the trooper had probable cause to believe that the defendant was responsible for a civil infraction for possessing marijuana while under 21 years of age contrary to the protections of the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 *et seq*. [*People v Wilkins*, ___ Mich ___, ___; 18 NW3d 294, 294 (2025).]

We hold that where the trooper had probable cause to believe only that defendant was responsible for a civil infraction, the search of the vehicle was not permissible under the automobile exception to the warrant requirement.[3]

## II. STANDARD OF REVIEW

"When reviewing a motion to suppress, this Court reviews for clear error a trial court's factual findings." *People v Duff*, 514 Mich 617, 629; 22 NW3d 476 (2024). And we review de novo any questions of constitutional law and the application of constitutional standards to uncontested facts. *Id*. at 629-630.

## III. MICHIGAN REGULATION AND TAXATION OF MARIHUANA ACT

As we recognized last term, the Michigan Regulation and Taxation of Marihuana Act (MRTMA) represents "[a] sea change regarding the legality of marijuana" in Michigan. *People v Armstrong*, ___ Mich ___, ___; ___ NW3d ___ (Docket No. 165233) (April 2, 2025); slip op at 10. The people's "general intent" in approving the MRTMA was "to decriminalize the use and possession of marijuana . . . ." *Id*. at ___; slip op at 10.

---

[3] Though we asked the parties to brief the prolonging of a traffic stop, see *Rodriguez v United States*, 575 US 348; 135 S Ct 1609; 191 L Ed 2d 492 (2015), we do not answer that question because it is no longer necessary to do so in the instant appeal.

Moreover, we note that the prosecution conceded that the search of defendant's person exceeded the scope of *Terry*, 392 US 1, which allows for a frisk for weapons, and was not supported by probable cause.

5

However, this did not render possession or use of marijuana lawful in all contexts. *Id*. at ___; slip op at 11. Relevant here, "a person under 21 years of age who possesses not more than 2.5 ounces of marihuana or who cultivates not more than 12 marihuana plants . . . is responsible for a civil infraction" for a first or second violation. MCL 333.27965(3)(a) and (b). This is in accord with the other stated intent "to . . . prevent the distribution of marihuana to persons under 21 years of age[.]" MCL 333.27952. And the MRTMA retains criminal penalties for possession and other activities involving large amounts of marijuana. MCL 333.27965(4).

## IV. DISCUSSION

With this background in mind, we turn to the parties' request that we resolve how the Fourth Amendment applies to minors who are believed to be in possession of marijuana. See MCL 333.27965(3)(a) and (b). The question boils down to whether a police officer must have probable cause to believe a *crime*, as opposed to a *civil infraction*, has occurred to justify the warrantless search of a vehicle. In this case, where the trooper had probable cause to believe that the vehicle contained a small amount of marijuana—i.e., that a civil infraction had occurred, but not that the vehicle contained evidence of a *crime*— such probable cause was insufficient to support a warrantless search under the automobile exception. For these reasons, we reverse the judgment of the Court of Appeals.

A. THE FOURTH AMENDMENT & AUTOMOBILE EXCEPTION TO THE SEARCH-WARRANT REQUIREMENT

The Fourth Amendment of our United States Constitution provides as follows:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or

6

affirmation, and particularly describing the place to be searched, and the persons or things to be seized. [US Const, Am IV.]

This amendment was adopted in the shadow of the American Revolution and not long after the states adopted our federal Constitution. Among the acts that culminated in our Declaration of Independence were the issuance of "writs of assistance" and "general warrants" by English officials. *Boyd v United States*, 116 US 616, 625-626; 6 S Ct 524; 29 L Ed 746 (1886), overruled in part on other grounds by *Md Penitentiary Warden v Hayden*, 387 US 294 (1967). Writs of assistance were issued to revenue officers, "empowering them, in their discretion, to search suspected places for smuggled goods[.]" *Boyd*, 116 US at 625. Similarly, general warrants were issued "for searching private houses for the discovery and seizure of books and papers that might be used to convict their owner of the charge of libel." *Id*. at 625-626.

The antagonism of these acts, the United States Supreme Court has observed, is necessary context "to ascertain the nature of the proceedings intended by the Fourth Amendment to the Constitution under the terms 'unreasonable searches and seizures[.]' " *Id*. at 624-625.[4] The Framers sought to provide for "those safeguards which had grown up in England to protect the people from . . . [these] invasions of home and privacy of the citizens and the seizure of their private papers in support of [any] charges, real or

---

[4] See also *Md Penitentiary Warden v Hayden*, 387 US 294, 301; 87 S Ct 1642; 18 L Ed 2d 782 (1967) ("We have examined on many occasions the history and purposes of the Amendment. It was a reaction to the evils of the use of the general warrant in England and the writs of assistance in the Colonies . . . .").

imaginary, [officials could] ma[ke] against them." *Weeks v United States*, 232 US 383, 390; 34 S Ct 341; 58 L Ed 652 (1914).[5]

Broadly, the Fourth Amendment "guarantees an individual's right to be free from unreasonable searches and seizures." *People v Lucynski*, 509 Mich 618, 634; 983 NW2d 827 (2022). And warrantless searches are "presumed" unreasonable. *Id*. at 637. Although a warrantless search may be constitutional if "shown to be within one of several established exceptions," *id*., these exceptions are "jealously and carefully drawn" in light of the Framers' intent, *Jones v United States*, 357 US 493, 499; 78 S Ct 1253; 2 L Ed 2d 1514 (1958). Evidence seized as the result of an unconstitutional search is generally excluded at trial. *Wong Sun v United States*, 371 US 471, 485; 83 S Ct 407; 9 L Ed 2d 441 (1963).[6]

Here, we are asked to consider the lawfulness of the search under the so-called automobile exception to the warrant requirement. The Fourth Amendment and its exceptions seek to balance the private interests of the individual against the government's interest in fighting crime. See, e.g., *Welsh v Wisconsin*, 466 US 740, 748-753; 104 S Ct 2091; 80 L Ed 2d 732 (1984) (addressing exigent circumstances to justify warrantless arrests in the home). Though one has "privacy interests in an automobile [that] are constitutionally protected," the United States Supreme Court has said that this interest has "a lesser degree of protection" relative to an individual's home or person. *California v Carney*, 471 US 386, 390; 105 S Ct 2066; 85 L Ed 2d 406 (1985). A person generally has

---

[5] It is worth noting that we subsequently adopted the historical reasoning of *Boyd* and *Weeks* in interpreting our own Constitution's search and seizure protections. See generally *People v Marxhausen*, 204 Mich 559; 171 NW 557 (1919) (decided under the 1908 Michigan Constitution); see also Cooley, Constitutional Limitations (7th ed), p 426.

[6] See also *United States v Calandra*, 414 US 338, 347; 94 S Ct 613; 38 L Ed 2d 561 (1974).

a decreased expectation of privacy in their vehicle because "the passenger compartment . . . is relatively open to plain view" and vehicles are subject to "pervasive regulation," including the ability of police officers to make traffic stops. *Id*. at 391-392.[7] Moreover, the government has a heightened interest in an immediate search without obtaining a warrant because " 'the opportunity to search is fleeting since a car is readily movable.' " *Id*. at 391, quoting *Chambers v Maroney*, 399 US 42, 51; 90 S Ct 1975; 26 L Ed 2d 419 (1970).

For these reasons, the United States Supreme Court has recognized the automobile exception on the basis that vehicles present an "exigent circumstance[]." See 3 LaFave, Search & Seizure (6th ed), § 5.5(c), pp 338-353. Such "exigent circumstances," it is said, make enforcement of the warrant requirement impracticable. *Id*. Thus, the automobile exception serves as an exception to the Fourth Amendment's warrant requirement, meaning that " 'the prior approval of [a] magistrate is waived' " and officers may search the vehicle without a warrant. *Carney*, 471 US at 394, quoting *United States v Ross*, 456 US 798, 823; 102 S Ct 2157; 72 L Ed 2d 572 (1982). This applies to the vehicle as well as any items or containers contained therein, *Ross*, 456 US at 824-825,[8] so long as the vehicle " 'is readily mobile,' " *Armstrong*, ___ Mich at ___; slip op at 8, quoting *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996). However, a police

---

[7] See also, generally, *Colorado v Bannister*, 449 US 1; 101 S Ct 42; 66 L Ed 2d 1 (1980) (upholding a warrantless search subject to the automobile exception where items matching the description of those recently stolen were in plain view from the officer's vantage point outside of the vehicle).

[8] Cf. *California v Acevedo*, 500 US 565, 580; 111 S Ct 1982; 114 L Ed 2d 619 (1991) (holding that the automobile exception also applies to containers in an automobile where the probable cause relates to the container, specifically, rather than the vehicle as a whole).

officer performing a warrantless search under the automobile exception must have probable cause to believe that " 'contraband or evidence of a crime . . . will be found in a particular place.' " *Armstrong*, ___ Mich at ___; slip op at 8, quoting *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000).[9]

Probable cause exists when "there is a 'substantial basis for inferring a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Armstrong*, ___ Mich at ___; slip op at 8 (some quotation marks omitted), quoting *Kazmierczak*, 461 Mich at 417-418. Just last term, we held that the smell of marijuana alone is not sufficient to establish probable cause to support a search because the people have voted to legalize the possession and consumption of marijuana. *Armstrong*, ___ Mich at ___; slip op at 11-12. However, *Armstrong* does not tell us whether the automobile exception applies where possession would be a civil infraction.

B. DOES THE AUTOMOBILE EXCEPTION APPLY TO CIVIL INFRACTIONS?

Both this Court and the United States Supreme Court have repeatedly said that the probable cause necessary to justify a warrantless search must relate to the presence of " 'contraband or evidence of a crime . . . in a particular place.' " *People v Keller*, 479 Mich 467, 475; 739 NW2d 505 (2007), quoting *Illinois v Gates*, 462 US 213, 238; 103 S Ct 2317; 76 L Ed 2d 527 (1983); see also *Armstrong*, ___ Mich at ___; slip op at 8; *Bufkin v Collins*, 604 US 369, 384; 145 S Ct 728; 221 L Ed 2d 192 (2025).[10] Neither this Court nor the

---

[9] See also *Bannister*, 449 US 1.

[10] See also *Maryland v King*, 569 US 435, 449; 133 S Ct 1958; 186 L Ed 2d 1 (2013); *Florida v Harris*, 568 US 237, 243; 133 S Ct 1050; 185 L Ed 2d 61 (2013); *United States v Grubbs*, 547 US 90, 95; 126 S Ct 1494; 164 L Ed 2d 195 (2006); *Levine*, 461 Mich at 185.

United States Supreme Court has extended the automobile exception to allow for a warrantless search of a vehicle based on probable cause to believe that a civil infraction was committed.[11] Today, we decline to do so.

The United States Supreme Court has not further defined what constitutes "contraband" and "evidence of a crime."[12] A civil infraction is, by definition, not a crime, MCL 257.6a; MCL 600.113(1)(a), so probable cause to believe that a civil infraction occurred does not entail "evidence of a crime." However, we must also examine whether a civil infraction for possession of marijuana allows a warrantless search because it is "contraband" under existing caselaw.

We first look to *Carroll v United States*, 267 US 132; 45 S Ct 280; 69 L Ed 543 (1925), which established the automobile exception. The case concerned federal officials' ability to search a vehicle for alcohol banned by the National Prohibition Act (also known as the Volstead Act). *Id*. at 143-144, 153-154. The *Carroll* Court deemed such alcohol "contraband goods" and declared that police may search for any "contraband goods concealed and illegally transported in an automobile . . . without a warrant[.]" *Id*. at 153.

---

[11] See generally *Bannister*, 449 US at 1-4 (upholding a warrantless search under the automobile exception where items matching the description of those recently stolen were in plain view from the officer's vantage point outside of the vehicle); *Ross*, 456 US 798 (allowing a search of a container within a car when the search of the car was supported by probable cause to believe that narcotics were stored in the vehicle); *Acevedo*, 500 US at 580 (allowing a search of a closed bag in the trunk of an automobile when police had probable cause to believe the bag contained narcotics, but noting that a search of the rest of the vehicle would have been without probable cause and, therefore, unreasonable).

[12] In *Hayden*, 387 US at 301, the United States Supreme Court eliminated the prior historic distinction between " 'mere evidence' " and "instrumentalities, fruits of crime, or contraband" that can be seized under a search warrant.

11

Though it did not explicitly define the term "contraband," the Court did make useful comparisons. For instance, it noted preexisting common-law rules allowing for the seizure of stolen goods and goods that went untaxed or were "concealed to avoid the duties payable on them[.]"[13] *Id*. at 149-150. And it compared the Volstead Act to the various customs statutes enacted by Congress under which searches for, and seizure of, contraband goods were authorized. *Id*. at 150-153. The cases *Carroll* cited in drawing these comparisons indicate that breaches of these statutes were violations of criminal law. See, e.g., *Cotzhausen v Nazro*, 107 US 215, 218-219; 2 S Ct 503; 27 L Ed 540 (1883) (recognizing that knowing violations of the postal treaty were punishable by fines "not exceeding five thousand dollars nor less than fifty dollars, or . . . imprison[ment] for any time not exceeding two years, or both") (quotation marks and citation omitted).[14] Likewise, the *Carroll* Court explained that a person violating the Volstead Act was "to be arrested for a misdemeanor for his first and second offenses and for a felony if he offend[ed a] third time." *Carroll*, 267 US at 154. Thus, *Carroll* only addressed the automobile exception with respect to contraband that was in violation of criminal law and did not consider its applicability to situations in which possession of an item is a mere civil infraction.[15]

---

[13] Though it also distinguished the latter common-law rule in holding that it "would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor" despite the fact that "[t]ravelers may be so stopped in crossing an international boundary . . . ." *Carroll*, 267 US at 153-154.

[14] See also, e.g., *Boyd*, 116 US at 617.

[15] We recognize that our sister court in Maryland has concluded to the contrary when faced with a statute decriminalizing possession of less than 10 grams of marijuana. See *Robinson v State*, 451 Md 94; 152 A3d 661 (2017). In addition to the slightly different legislative posture in Maryland, where the legislature specified that the decriminalization bill "may not be construed" to affect seizure law, the Maryland court failed to address the petitioners'

Aside from relying on *Carroll*, the prosecution also cites the definition of the term "contraband" in *Black's Law Dictionary*. It defines the term as meaning either "[i]llegal or prohibited trade; smuggling" or "[g]oods that are unlawful to import, export, produce, or possess." *Black's Law Dictionary* (12th ed). That definition does not refer explicitly to criminal or civil law. Terms such as "illegal"[16] and "unlawful"[17] do not plainly encompass noncriminal conduct. And, in light of the "jealously guarded" exceptions to the warrant requirement, drawn from the Fourth Amendment's history and our contemporary caselaw, we decline to extend "contraband" to include trade or goods related to a civil infraction without clearer authority.

---

argument "that the contraband in <u>Carroll</u> . . . was a crime to possess," other than to state, "The fallacy of this argument is that, in <u>Carroll</u>, the Supreme Court concluded that ability to search does not depend on the suspected offense being an offense for which arrest is authorized." *Id*. at 129. However, the *Carroll* Court only so held in refusing to apply to the automobile exception the common-law rule that a police officer can only arrest for misdemeanors without a warrant where the violation occurred in their presence. See *Carroll*, 267 US at 156-159. Because both misdemeanors and felonies are violations of the criminal law, this analysis does not answer the question presented here.

Justice ZAHRA cites a handful of other state court cases in his dissent. However, like *Robinson*, these cases fail to engage in a significant historical analysis of search protections and are largely distinguishable. See, e.g., *State v Barclay*, 398 A2d 794 (Me, 1979); *State v Smalley*, 233 Or App 263, 270-271; 225 P3d 844 (2010) (analyzing the search of the defendant's backpack under the Oregon Constitution); *People v Waxler*, 224 Cal App 4th 712, 715 n 1, 723; 168 Cal Rptr 3d 822 (2014) (clarifying that while possession of less than 28.5 grams of marijuana was an " 'infraction' " punishable only by a fine, the California Penal Code categorizes an "infraction" as being "a 'crime' " and holding *Commonwealth v Cruz*, 459 Mass 459; 945 NE2d 899 (2011), discussed later in this opinion, inapposite for that reason).

[16] "Forbidden by law; unlawful . . . ." *Black's Law Dictionary* (12th ed).

[17] "Not authorized by law; illegal" *or* "[c]riminally punishable . . . ." *Black's Law Dictionary* (12th ed).

The Framers did not enact the Fourth Amendment *only* in response to the unfettered discretion embodied in the writs of assistance during the colonial period; they also objected to the general warrants seeking libelous materials and evidence supporting minor charges. *Boyd*, 116 US at 625-626; see also *Weeks*, 232 US at 390. In analyzing its own declaration of rights, the Massachusetts Supreme Judicial Court observed that, historically, " '[s]earch warrants were . . . confined to cases of public prosecutions, *instituted and pursued for the suppression of crime or the detection and punishment of criminals*.' " *Commonwealth v Cruz*, 459 Mass 459, 475-476; 945 NE2d 899 (2011) (ellipsis in *Cruz*), quoting *Robinson v Richardson*, 79 Mass 454, 456 (1859).[18] Professor Wayne LaFave also incorporates this understanding into his articulation of the probable-cause standard: "Two conclusions . . . must be supported by substantial evidence: that the items sought are in fact *seizable by virtue of being connected with criminal activity*, and that the items will be found in the place to be searched." 2 LaFave, Search & Seizure (6th ed), § 3.1(b), pp 8-9 (emphasis added). Such a history supports the conclusion that the "contraband" discussed in *Caroll* only refers to those goods the possession of which violates the criminal law.

Moreover, this distinction comports with contemporary Fourth Amendment doctrine. " '[T]he ultimate touchstone of the Fourth Amendment is "reasonableness." ' " *Lange v California*, 594 US 295, 301; 141 S Ct 2011; 210 L Ed 2d 486 (2021), quoting *Brigham City v Stuart*, 547 US 398, 403; 126 S Ct 1943; 164 L Ed 2d 650 (2006). As noted above, courts seek to balance the interests of the government against those of the

---

[18] See also *Levine*, 461 Mich at 182 (observing that the same probable-cause analysis applies to both issuance of a search warrant and warrantless searches under the automobile exception).

14

individual in determining whether a search was reasonable. See generally *Welsh*, 466 US 740; *Carney*, 471 US at 390. Accordingly, police generally cannot make a warrantless entry into a suspect's home to arrest them for a misdemeanor offense. *Welsh*, 466 US at 748-751. Similarly, some of our sister courts have held it unreasonable to initiate an investigative *Terry* stop for a civil infraction such as a failure to pay parking tickets, *State v Holmes*, 569 NW2d 181, 184-186 (Minn, 1997), or carrying an open container of alcohol in public, *State v Duncan*, 146 Wash 2d 166, 175; 43 P3d 513 (2002). In so holding, these cases noted important distinctions between criminal offenses and civil offenses.

Reasonableness demands some proportionality between the violation being investigated and the acceptable intrusion into a suspect's Fourth Amendment rights. *Delaware v Prouse*, 440 US 648, 654; 99 S Ct 1391; 59 L Ed 2d 660 (1979) ("[T]he permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.").[19] To wit, this Court has said:

> These rights of the individual in his person and property should be held sacred, and any attempt to fritter them away under the guise of enforcing drastic sumptuary legislation (no matter how beneficial to the people it may be claimed to be) must meet with the clear and earnest disapproval of the courts. [*Marxhausen*, 204 Mich at 567.]

And on the Fourth Amendment spectrum, criminal activity justifies a relatively greater level of intrusion than a civil offense.

As the Massachusetts Supreme Judicial Court observed regarding its own statute, "[D]ecriminalizing possession of [a] small quantity of marijuana" signaled the people's

---

[19] See also *Cruz*, 459 Mass at 476-477.

intent to establish that such an offense was "no longer 'a serious infraction worthy of criminal sanction[.]' " See *Commonwealth v Rodriguez*, 472 Mass 767, 777; 37 NE3d 611 (2015), quoting *Cruz*, 459 Mass at 471. Our courts, too, have recognized that civil infractions are less severe than criminal offenses. See, e.g., *People v Antkoviak*, 242 Mich App 424, 464; 619 NW2d 18 (2000) (categorizing the offense of minor in possession of alcohol, when a civil infraction, as a "petty offense"); see also MCL 257.6a (" 'Civil infraction' means an act or omission prohibited by law which is not a crime . . . and for which civil sanctions may be ordered."); MCL 600.113(1). "[A] criminal sanction is qualitatively different from civil penalties because [the former] reflects society's moral condemnation." Burke, *Unpacking New Policing: Confessions of a Former Neighborhood District Attorney*, 78 Wash L Rev 985, 1062 (2003). And a civil infraction is not punishable by incarceration. *Antkoviak*, 242 Mich App at 466.[20] Thus, designation of an action as a civil infraction signals a reduced state interest in enforcing the prohibition at issue. *Cruz*, 459 Mass at 477 ("It is unreasonable for the police to spend time conducting warrantless searches for contraband when no specific facts suggest criminality.").

There is no dispute that downgrading marijuana offenses to civil infractions was specifically contemplated by the people of our state in enacting the MRTMA.[21] The

---

[20] *Saginaw Pub Libraries Bd of Library Comm'rs v Judges of the 70th Dist Court*, 118 Mich App 379, 387; 325 NW2d 777 (1982) ("Civil infractions are not crimes and are not punishable by imprisonment or by 'penal fines.' ").

[21] As we have explained previously, " 'The people reserve[d] to themselves the power to propose laws and to enact and reject laws' " by initiative and referendum. *Mothering Justice v Attorney General*, 515 Mich 328, 337-338 & 338 n 2; 29 NW3d 346 (2024), quoting Const 1963, art 2, § 9 (alteration in *Mothering Justice*). They did so in reliance on the fundamental principle that " '[a]ll political power is inherent in the people.' " *Mothering Justice*, 515 Mich at 347, quoting Const 1963, art 1, § 1 (alteration in *Mothering*

official ballot language describing the MRTMA informed voters that the Act would " '[c]hange several current violations from crimes to civil infractions.' " House Legislative Analysis, Ballot Proposal 1 of 2018 (October 16, 2018), p 2, quoting Proposal 18-1. In other words: the decision to legalize marijuana in many circumstances and make other acts civil violations instead of criminal violations indicates it was the people's intent to deprioritize enforcement of low-level possession violations and reduce the consequences of such violations.

In contrast, the Fourth Amendment interests of the individual remain unchanged. Though we recognize a lesser privacy interest in the automobile context, that does not render its contents entirely without protection. *Carney*, 471 US at 390 ("[T]he [*Carroll*] Court recognized that the privacy interests in an automobile are constitutionally protected; however, it held that the ready mobility of the automobile justifies a lesser degree of protection of those interests."). Despite this mobility, "the Fourth Amendment [still] provides protection to the owner of every container [(and vehicle)] that conceals its contents from plain view." *Ross*, 456 US at 822-823.[22] " '[T]he Fourth Amendment

---

*Justice*). Accordingly, " 'statutes enacted by initiative petition are interpreted in accordance with the intent of the electors.' " *DeRuiter v Byron Twp*, 505 Mich 130, 139; 949 NW2d 91 (2020), quoting *People v Mazur*, 497 Mich 302, 308; 872 NW2d 201 (2015). We would be neglecting our duty to respect the intent of the people if we ignored the purposes that motivated them to enact the MRTMA. Cf. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 185; 521 NW2d 499 (1994) ("This Court cannot properly protect the mandate of the people without examining both the origin and purpose of a constitutional provision, because provisions stripped of their context may be manipulated and distorted into unintended meanings.").

[22] Cf. *Katz v United States*, 389 US 347, 351-352; 88 S Ct 507; 19 L Ed 2d 576 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a

protects people, not places.' " *United States v Mendenhall*, 446 US 544, 550; 100 S Ct 1870; 64 L Ed 2d 497 (1980), quoting *Katz v United States*, 389 US 347, 351; 88 S Ct 507; 19 L Ed 2d 576 (1967).  And a person driving their automobile certainly retains " 'the right . . . to the possession and control of his own person, free from all restraint or interference of others[.]' " *Terry*, 392 US at 9, quoting *Union Pacific R Co v Botsford*, 141 US 250, 251; 11 S Ct 1000; 35 L Ed 734 (1891).

Given this background, the automobile exception cannot be said to apply where a police officer only has probable cause to believe that substances prohibited only by the civil law are present.[23]  In designating violation of MCL 333.27965(3) as a civil infraction, the people expressed a diminished state interest in its enforcement.  And given the history preceding the Framers' adoption of the Fourth Amendment, it is apparent that a person's right to free movement and privacy should not be offended without a warrant for such a minor infraction.  This right, though diminished in the automobile context, must prevail if it is to be accorded any meaning.  *Prouse*, 440 US at 662-663.[24]  For these reasons,

---

subject of Fourth Amendment protection.  But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.") (citations omitted).

[23] Nothing in this opinion affects the police power to search for evidence of criminal violations.  For example, with probable cause, an officer may conduct an automobile search for evidence of driving under the influence of marijuana, see MCL 257.625; MCL 333.27954(1)(a) and (g), or the distribution of criminal quantities of marijuana, see MCL 333.7401; see also MCL 333.27965(1), (2), and (4).

[24] As the *Prouse* Court observed:

> Automobile travel is a basic, pervasive, and often necessary mode of transportation to and from one's home, workplace, and leisure activities. Many people spend more hours each day traveling in cars than walking on the streets. . . .  Were the individual subject to unfettered governmental intrusion every time he entered an automobile, the security guaranteed by the

18

substances prohibited only by civil law are not "contraband" for purposes of supporting a warrantless search of an automobile based on probable cause under the Fourth Amendment.

In dissenting from our holding, Justice ZAHRA largely relies on the proposition that no court has ever explicitly held that "contraband" does not include items prohibited by civil law. This upends our repeated holdings that " '[a] warrantless search or seizure is presumed unconstitutional unless shown to be within one of [the] established exceptions' " to the warrant requirement. *Armstrong*, ___ Mich at ___; slip op at 6, quoting *Lucynski*, 509 Mich at 637. As such, "[t]he burden is always on the state to show such an exception exists." *People v Reed*, 393 Mich 342, 362; 224 NW2d 867 (1975) (discussing both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the 1963 Michigan Constitution).[25]

Justice ZAHRA also discusses the United States Supreme Court's decision in *Florida v White*, 526 US 559; 119 S Ct 1555; 143 L Ed 2d 748 (1999). There, the Court held constitutional the seizure of a car police officers had observed the defendant use to deliver cocaine where the car was subject to the Florida Contraband Forfeiture Act. *Id*. at 561. Police seized the car during the defendant's arrest. *Id*. Justice ZAHRA cites this case for the proposition that the civil law can declare an item contraband that the state can seize

---

Fourth Amendment would be seriously circumscribed. . . . [P]eople are not shorn of all Fourth Amendment protection when they step from their homes onto the public sidewalks. Nor are they shorn of those interests when they step from the sidewalks into their automobiles. [*Prouse*, 440 US at 662-663.]

[25] See also *United States v Jeffers*, 342 US 48, 51; 72 S Ct 93; 96 L Ed 59 (1951) ("Only where incident to a valid arrest, or in 'exceptional circumstances,' may an exemption lie, and then the burden is on those seeking the exemption to show the need for it.") (citations omitted).

19

without violating the Fourth Amendment.  It is worth noting, however, that the Act defined a "contraband article," in relevant part, as "any 'vehicle of any kind, . . . which was used . . . as an instrumentality in the commission of, or in aiding or abetting in the commission of, any felony.' "  *Id*. at 565 n 3, quoting Fla Stat 932.701(2)(a)(5) (1997) (ellipses in *White*).  The *White* Court, in fact, relied on *Carroll*, 267 US 132, which as discussed above concerned evidence of crimes.[26]  *White*, 526 US at 564-565.[27] Additionally, the *White* Court relied on the greater latitude given to police to seize contraband visible in a public place.  *Id*. at 565.  In other words, *White* does not contradict our decision today.

Instead, we ground our decision in the well-recognized history, caselaw, and practice regarding our constitutional protections as discussed herein.  Doing otherwise would create a broad exception to the warrant requirement for civil infractions that significantly diminishes the protections of the Fourth Amendment given that traffic stops often involve civil infractions.  See, e.g., *People v Dunbar*, 499 Mich 60, 66-67; 879 NW2d 229 (2016); see also MCL 257.742(1) (authorizing an officer who "witnesses an individual violating [the Michigan Vehicle Code] . . . [where] that violation is a civil infraction" to

---

[26] Cf. also *Culley v Marshall*, 601 US 377, 398-399; 144 S Ct 1142; 218 L Ed 2d 372 (2024) (Gorsuch, J., concurring) (discussing the doctrines of search and seizure in customs law, which *Carroll* relied on, as historically narrow and particularly justified).

[27] Justice Souter's concurrence in *White* underscores this point, cautioning "against reading our holding as a general endorsement of warrantless seizures of anything a State chooses to call 'contraband.' "  *White*, 526 US at 566 (Souter, J., concurring).  Rather, "[t]he Fourth Amendment does not concede any talismanic significance to use of the term 'contraband' whenever a legislature may resort to a novel forfeiture sanction in the interest of law enforcement[.]"  *Id*. at 566-567.

"stop the individual, detain the individual temporarily . . . , and . . . [issue] a written citation"). Allowing the government to search for "evidence" of these minor infractions risks converting nearly every traffic stop into a search.

## C. APPLICATION

Our holding that the automobile exception is inapplicable to evidence of a civil infraction is insufficient to resolve this case. The prosecution argues that the trooper had probable cause not just concerning possession of some marijuana, but rather that the occupants possessed more than 2.5 ounces of marijuana, which is a criminal offense. See *Armstrong*, ___ Mich at ___; slip op at 13-14. We disagree.

Here, the trooper approached the vehicle and smelled marijuana. The trooper explained that he could not tell when the marijuana had been smoked, but he also clarified that "it didn't smell like [defendant] had just smoked it." He did not see any marijuana at any point in time. And he did not observe any signs of intoxication on the part of defendant or the passenger. The occupants both initially denied the possession of marijuana. The driver was searched, and no marijuana was found. The passenger, upon additional questioning, subsequently said she may have a small amount.

That the trooper smelled marijuana is also insufficient, alone or combined with the passenger's statement, to establish probable cause concerning the possession of a criminal amount of marijuana. As the Massachusetts Supreme Judicial Court has observed regarding unburned marijuana, "characterizations of odors as strong or weak are inherently subjective," and the underlying perception is influenced by a variety of environmental factors. *Commonwealth v Overmyer*, 469 Mass 16, 21-22; 11 NE3d 1054 (2014), citing

21

Doty et al, *Marijuana Odor Perception: Studies Modeled from Probable Cause Cases*, 28 Law & Hum Behav 223, 231-232 (2004). Consequently, while one can say that "the odor of unburnt . . . marijuana could be more consistent with the presence of larger quantities, it does not follow that such an odor reliably predicts the presence of a criminal amount of the substance . . . ." *Overmyer*, 469 Mass at 21. These concerns exist even before we get to the confounding characteristics of burned marijuana—e.g., that it is "powerful" and long-lasting. See *Armstrong*, ___ Mich at ___ n 10; slip op at 12 n 10. The upshot is that because the amount of marijuana present defines the distinction between a civil infraction and a crime, see MCL 333.27965(3), the officer must have probable cause to believe that a criminal amount of marijuana is present, see *Armstrong*, ___ Mich at ___; slip op at 10-11.[28] And merely smelling marijuana does not per se provide probable cause regarding possession of a criminal amount.

The passenger's statement that she may have had a small amount of marijuana likewise does not provide probable cause to believe the vehicle contained a criminal amount of marijuana. That statement does not provide evidence that the amount of marijuana in her possession would have been more than 2.5 ounces and, consequently, a crime. MCL 333.27965(3). To be sure, it is relevant to the probable-cause analysis that the passenger changed her answer concerning the presence of marijuana. See, e.g., *People*

---

[28] See also *Commonwealth v Daniel*, 464 Mass 746, 749-752; 985 NE2d 843 (2013) (holding that the smell of freshly burned marijuana and surrender of a noncriminal amount of marijuana was insufficient to establish probable cause to believe that the defendant possessed a criminal amount of marijuana); *Commonwealth v Sheridan*, 470 Mass 752, 757; 25 NE3d 875 (2015) (holding that a partially visible marijuana baggie consistent with a noncriminal amount of marijuana did not establish probable cause to believe that the defendant had a criminal amount of marijuana).

*v Moorman*, 331 Mich App 481, 488; 952 NW2d 597 (2020) ("[I]f defendant's possession was lawful, it is reasonable to believe that he would simply admit to marijuana being in the vehicle and produce his [medical-marijuana] registry card to establish its lawfulness.").[29] However, the issue in this case is not whether possession was unlawful—it would be, regardless of the amount—but whether the officer had a " 'substantial basis' " to believe that the marijuana was criminal in amount. See *Armstrong*, ___ Mich at ___; slip op at 8, quoting *Kazmierczak*, 461 Mich at 417-418. But any deception in this situation could certainly be an attempt to avoid the consequences of a civil violation just as well as a criminal one.

We reaffirm our previous recognition that the smell of marijuana, though not conclusive, may contribute to a probable-cause determination concerning whether a criminal amount of marijuana or evidence of a crime may be present. See *Armstrong*, ___ Mich at ___; slip op at 13. " '[T]he smell of marijuana may be a factor, but not a stand-alone one, in determining whether the totality of the circumstances established probable cause to permit a police officer to conduct a warrantless search of a vehicle . . . .' " *Id*. at ___; slip op at 13, quoting *People v Armstrong*, 344 Mich App 286, 300; 1 NW3d 299 (2022) (some quotation marks and citation omitted; ellipsis in *Armstrong*). For example, if the trooper here had seen a criminal amount of marijuana in plain view, defendant smoking marijuana, dissipating marijuana smoke, or signs of intoxication, the smell combined with any of those factors may well have established probable cause to search the

---

[29] We have previously recognized *Moorman* as hinging on this deception and the defendant's ability to lawfully possess less than 2.5 ounces of marijuana. See *Armstrong*, ___ Mich at ___; slip op at 10.

vehicle. See *Armstrong*, ___ Mich at ___; slip op at 13-14. But under the totality of the circumstances here, the smell of marijuana was insufficient to provide probable cause to believe that the vehicle's occupants were in possession of a *criminal* amount of marijuana. We do not view our holding as unexpected given that the United States Supreme Court has never extended the automobile exception to allow for a warrantless search of a vehicle based on probable cause to believe only that a civil infraction was committed. Our holding today is also consistent with the rule adopted by numerous other jurisdictions that have decriminalized or legalized marijuana possession. See *Armstrong*, ___ Mich at ___; slip op at 13-14, citing *People v Redmond*, 2024 IL 129201, ¶ 54; 248 NE3d 1026 (2024), *State v Torgerson*, 995 NW2d 164, 174 (Minn, 2023), *Commonwealth v Barr*, 266 A3d 25, 28 (Pa, 2021), and *People v Zuniga*, 372 P3d 1052 (Colo, 2016).

## V. CONCLUSION

A civil infraction is a violation of law that can be enforced by the state. However, the designation of activity as a civil offense demonstrates a reduced governmental interest that renders a warrantless search under the automobile exception based on probable cause unreasonable given the history of the Fourth Amendment. In the context of marijuana, this means a police officer must have probable cause to believe an automobile contains evidence of possession of a criminal amount of marijuana or another criminal offense to conduct a warrantless search under the automobile exception. The smell of marijuana is not enough and, here, there is little else on which the trooper could rely.

Consequently, we reverse the judgment of the Court of Appeals and remand to the Kent Circuit Court for further proceedings consistent with this opinion. We do not retain jurisdiction.

Kimberly A. Thomas
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden
Noah P. Hood

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

     Plaintiff-Appellee,

v                                   No. 167737

FREDDIE WILKINS, III,

     Defendant-Appellant.

_____

WELCH, J. (*concurring*).

I agree with Justice THOMAS that the Fourth Amendment to the United States Constitution does not permit warrantless searches of automobiles for evidence of civil infractions, and I join her opinion in full. I write separately because I would have decided this case under Article 1, § 11 of Michigan's 1963 Constitution, rather than under federal law.

While I believe that this Court should decide more cases under the Michigan Constitution in general, there are strong reasons to apply it in this case in particular. First, this case presents a relatively rare opportunity for this Court to add to the jurisprudence regarding Article 1, § 11 ("The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures."), as most of our recent search and seizure cases have been argued under the Fourth Amendment. See, e.g., *People v Carson*, ___ Mich ___, ___ n 11; ___ NW3d ___ (July 31, 2025) (Docket No. 166923); slip op at 11 n 11; *People v Armstrong*, ___ Mich ___, ___ n 5; ___ NW3d ___ (April 2, 2025) (Docket No. 165233); slip op at 6 n 5; *People*

*v Hughes*, 506 Mich 512, 524 n 5; 958 NW2d 98 (2020).  Here, defendant has preserved and asserted his claim that Trooper James Tompkins's actions violated his rights under Article 1, § 11.  As a result, I would reach his arguments.

Second, this case arises in a context where federal law is, in my view, less helpful.  Like Michigan, many other states have legalized marijuana.  And many state courts have opted to develop their own state's search and seizure doctrine to address these changes.  See, e.g., *Armstrong*, ___ Mich ___; *People v Redmond*, 2024 IL 129201; 248 NE3d 1026 (2024); *State v Torgerson*, 995 NW2d 164 (Minn, 2023); *Commonwealth v Barr*, 671 Pa 275, 298-299; 266 A3d 25 (2021); *Commonwealth v Rodriguez*, 472 Mass 767; 37 NE3d 611 (2015).  However, because marijuana has remained illegal at the federal level, federal courts have not yet had occasion to confront the issue we face in this case.  See, e.g., *United States v Pavao*, 134 F4th 649, 657 (CA 1, 2025) ("Although possession of less than an ounce of marijuana is no longer a crime in Rhode Island, it is still 'a crime under federal law which independently supports an arrest.' ") (quotation marks and citation omitted).  So, unlike in other contexts where we have interpreted Article 1, § 11 "coextensively" with the Fourth Amendment, there is no federal law for us to follow.

Third, our state Constitution provides a simpler basis to reach a decision.  In order to hold that the automobile exception to the warrant requirement does not extend to civil infractions, the majority must carefully parse the holdings of a number of United States Supreme Court decisions dating back to the prohibition era.  While I agree with the majority's conclusion that the Supreme Court has not addressed this issue, the federal courts might ultimately read the caselaw differently.  And of course, the United States Supreme Court could decide this issue and render our decision today irrelevant.

Rather than rely upon federal law—and an assumption that federal law will remain consistent with the majority's view—I would instead have followed the pathway of the other state supreme courts that have grappled with the interplay of marijuana legalization (or decriminalization) and the automobile exception. All of them have relied on their state constitutions when rendering a decision on the issue. See *Redmond*, 2024 IL at ¶ 23; *Torgerson*, 995 NW2d at 168; *Barr*, 671 Pa at 298-299; *Commonwealth v Sheridan*, 470 Mass 752, 756-757; 25 NE3d 875 (2015) (all citing their state constitutional provisions, along with the Fourth Amendment). See also *State v Duncan*, 146 Wash 2d 166, 171; 43 P3d 513 (2002) (doing the same in the context of a case involving possession of an open container of alcohol).

But, although I would have relied on Michigan's Constitution to decide this case, I agree completely with the majority's analysis under federal law and therefore concur.

Elizabeth M. Welch

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v                                               No. 167737

FREDDIE WILKINS, III,

      Defendant-Appellant.

_____

ZAHRA, J. (*dissenting*).

A majority of this Court examines conduct that has traditionally been understood as standard police work and transforms it into unconstitutional governmental action. Specifically, the Court holds that it was unlawful for the trooper, who smelled marijuana emanating from a vehicle occupied by two underaged people, one of whom admitted having marijuana in the vehicle, to conduct a warrantless search under the automobile exception to the Fourth Amendment. In so holding, the Court's majority assumes that the trooper lacked probable cause to believe that he would discover evidence of a crime because possession of a small amount of marijuana by someone under the age of 21 is a civil infraction.[1] But the automobile exception has never been read so myopically by either

_____

[1] The Michigan Regulation and Taxation of Marihuana Act (MRTMA), MCL 333.27951 *et seq.*, which was approved by voters in 2018, generally decriminalized the use and possession of marijuana by adults aged 21 years or older. MCL 333.27952. Under the MRTMA, adults at least 21 years old may possess up to 2.5 ounces of marijuana. MCL 333.27955(1)(a). However, persons under the age of 21 possessing 2.5 ounces or less of marijuana are guilty of a civil infraction. MCL 333.27965(3). Anyone possessing between 2.5 and 5 ounces is also guilty of a civil infraction (or a misdemeanor for a third offense),

this Court or the Supreme Court of the United States. I conclude that the search was lawful under the automobile exception to the Fourth Amendment because the trooper had probable cause to believe the search would produce marijuana *contraband*.[2] This Court and the Supreme Court of the United States have consistently held that a law enforcement officer may search a vehicle under the automobile exception to the warrant requirement if the officer has probable cause to believe he will find contraband *or* evidence of a crime.[3] I would therefore affirm the judgment of the Court of Appeals.

---

MCL 333.27965(2), and possession of more than 5 ounces is always a misdemeanor, MCL 333.27965(4).

[2] This is because defendant and his passenger were under the age of 21 and prohibited from possessing any amount of marijuana. MCL 333.27965(3). As discussed later in this opinion, the trooper possessed probable cause to believe that he would find marijuana contraband in the vehicle: (1) the trooper smelled the odor of marijuana upon approaching the vehicle; (2) both the driver and passenger were under the age of 21, so he knew no one in the vehicle could legally possess any amount of marijuana; (3) the driver and the passenger initially lied about having marijuana; and (4) then the passenger admitted to having some marijuana in the vehicle.

[3] *People v Armstrong*, ___ Mich ___, ___; ___ NW3d ___ (April 2, 2025) (Docket No. 165233); slip op at 8, citing *People v Kazmierczak*, 461 Mich 411, 417-418; 605 NW2d 667 (2000), overruled by *Armstrong*, ___ Mich at ___; slip op at 1-2; *California v Acevedo*, 500 US 565, 580; 111 S Ct 1982; 114 L Ed 2d 619 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."); *Carroll v United States*, 267 US 132, 154; 45 S Ct 280; 69 L Ed 543 (1925) (stating that police can search under the automobile exception if they have probable cause to believe that a vehicle is carrying "contraband or illegal merchandise"); *Florida v White,* 526 US 559, 563-564; 119 S Ct 1555; 143 L Ed 2d 748 (1999) ("In *Carroll*, we held that when federal officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband.").

## I. FACTS & PROCEDURAL HISTORY

Michigan State Police Trooper James Tompkins stopped the SUV that defendant was driving because defendant was speeding.[4] There were two occupants in the vehicle. When the trooper approached the passenger side of the vehicle, which had the front passenger's window rolled down, he noticed the "odor of marijuana." After obtaining driver's licenses from defendant and the passenger, the trooper observed that both of the vehicle's occupants were under the age of 21. He therefore knew that neither occupant could legally possess any amount of marijuana. Both occupants initially denied possessing any marijuana. At this point in the stop, the trooper called for backup.

Once the backup unit arrived, the trooper asked defendant to exit the vehicle, and defendant complied. When the trooper asked defendant if he had any weapons on his person, defendant said that he did not. The trooper then searched defendant. Next, the trooper ordered the passenger out of the vehicle and questioned her. The passenger, in contrast to her original answer, admitted that she had some "shake in there," which the

---

[4] The majority opinion states that "[t]he facts of this case are not in dispute." But, clearly, they are. Nowhere in the trooper's testimony did the trooper say he suspected defendant and his passenger of *only* having 2.5 ounces or less of marijuana, a civil infraction. See MCL 333.27965(3). Moreover, the majority opinion states that the passenger said she "may have had a small amount" of marijuana. Instead, the trooper testified that the passenger said she *had* marijuana. Further, to the extent the passenger admitted to having only a small amount of marijuana, nothing in our jurisprudence suggests that law enforcement, in the midst of an investigation, must accept as truth that the passenger did indeed possess only a small amount, whatever that passenger's subjective understanding of what a small amount of marijuana may be. What constitutes a small amount is a matter of interpretation. Some may well believe that 3 to 6 ounces of marijuana is a small amount. Given all the facts established by police prior to initiating the vehicle search—the smell of marijuana coming from a car occupied by two underaged occupants, one of whom admits to possessing marijuana—police had more than sufficient cause to search the automobile without a warrant.

3

trooper testified was commonly understood to mean a "small amount of marijuana." Based on this information, the trooper searched the vehicle, including a backpack found on the floor of the front passenger seat. In the backpack, the trooper found ziplock cellophane packages, which he testified were commonly used by dispensaries to package marijuana, and a loaded Glock 20 handgun with a 33-round magazine, which is the basis for the weapons charge against defendant. After the trooper read defendant his *Miranda*[5] rights, defendant admitted that the gun belonged to him. The trooper testified that he never asked for consent to search the vehicle. The trooper also testified that when he started his investigation, he did *not* know that all he would find would be evidence of a civil infraction. Indeed, had the officer found more than 2.5 ounces of marijuana in the car, the offense may well have been a misdemeanor or more, depending on how much marijuana was discovered and the prior record of the person who possessed it.

Defendant was charged with carrying a concealed weapon in a vehicle.[6] Defendant filed a motion in the trial court to suppress the handgun, arguing, among other things, that the automobile exception to the Fourth Amendment did not justify the trooper's search of the vehicle because the trooper was only investigating a civil infraction, not a crime. The trial court denied defendant's motion to suppress, finding as follows:

> Trooper Tompkins did not observe any amount of marijuana that would make possession a civil infraction. Rather, he smelled and recognized the odor of marijuana when he approached the vehicle. That odor did not give Trooper Tompkins any indication of the amount of marijuana, only that some of it was present in the vehicle. Moreover, he knew from the occupants' driver's licenses that both Defendant and his passenger were under the age of 21 years

---

[5] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[6] MCL 750.227.

4

old. Accordingly, he had probable cause under the automobile exception to search the vehicle and its contents.

Defendant filed an interlocutory application for leave to appeal in the Court of Appeals, and the Court of Appeals denied defendant's application for failure to convince the Court of the need for immediate appellate review.[7] Defendant then sought leave to appeal in this Court, and we remanded the case to the Court of Appeals for consideration as on leave granted.[8] On remand, in an unpublished per curiam opinion, the Court of Appeals affirmed the trial court, holding, among other things, that the search of defendant's vehicle did not violate the Fourth Amendment.[9] The panel rejected any distinction between criminal and civil violations of the MRTMA, at least as far as the automobile exception to the Fourth Amendment's warrant requirement is concerned.[10] The panel further held that the automobile exception applies if the police have probable cause to believe that a vehicle contains "contraband," which was the case here because both defendant and his passenger

_____

[7] *People v Wilkins*, unpublished order of the Court of Appeals, entered December 11, 2023 (Docket No. 367209).

[8] *People v Wilkins*, 513 Mich 1052 (2024).

[9] *People v Wilkins*, unpublished per curiam opinion of the Court of Appeals, issued September 5, 2024 (Docket No. 367209), pp 4-7.

[10] *Id*. at 6 ("In our view, these omissions support that any distinction between civil and criminal penalties under the MRTMA is irrelevant, and we conclude that probable cause exists to support a warrantless vehicle search *so long as* facts adequately support that the suspected activity is generally unlawful."). The reason given by the panel for rejecting the distinction between civil and criminal amounts of marijuana for purposes of the automobile exception was that neither *People v Armstrong*, 344 Mich App 286; 1 NW3d 299 (2022), nor *People v Moorman*, 331 Mich App 481; 952 NW2d 597 (2020), both of which addressed whether the odor of marijuana, together with other facts, could establish probable cause to search a vehicle, mentioned any such distinction. *Wilkins*, unpub op at 6.

were less than 21 years old and therefore could not legally possess any amount of marijuana.[11]

Defendant sought leave to appeal in this Court. We ordered oral argument on the application, asking the parties to address the following issues:

> (1) whether the search of the defendant's person by Trooper Tomkins exceeded the permissible scope of *Terry v Ohio*, 392 US 1, 21, 30-31 (1968); (2) if so, whether the discovery of the recovered weapon was causally connected to the search of the defendant's person; and (3) whether the search of the defendant's vehicle was permissible under the automobile exception to the warrant requirement, where the trooper had probable cause to believe that the defendant was responsible for a civil infraction for possessing marijuana while under 21 years of age contrary to the protections of the Michigan Regulation and Taxation of Marihuana Act, MCL 333.27951 *et seq*.[12]

## II. STANDARD OF REVIEW

This Court recently laid out the relevant standard of review in *People v Armstrong*:

> We review a trial court's findings of fact at a suppression hearing for clear error. *People v Hammerlund*, 504 Mich 442, 450; 939 NW2d 129 (2019). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002). Our review of the application of Fourth Amendment principles is de novo. *Hammerlund*, 504 Mich at 541.

---

[11] *Id.*

[12] *People v Wilkins*, ___ Mich ___, ___; 18 NW3d 294, 294 (2025). My dissent is limited to addressing Issue 3 because this is the only issue addressed in the majority opinion. Interestingly, it appears that this Court put the cart before the horse in framing Issue 3 of the MOAA order. Whether defendant was responsible for a civil infraction depends entirely on the amount of marijuana defendant possessed at the time of defendant's encounter with law enforcement. There was sufficient probable cause to search the automobile for marijuana. Whether the search would produce quantities of marijuana so small that the offense was a civil infraction was unknown to law enforcement at the time of the search.

6

The Fourth Amendment of the United States Constitution guarantees the right of persons to be secure from unreasonable searches and seizures. US Const, Am IV. "The touchstone of the Fourth Amendment is reasonableness." *Hammerlund*, 504 Mich at 451. "A warrantless search or seizure is presumed unconstitutional unless shown to be within one of several established exceptions." *People v Lucynski*, 509 Mich 618, 637; 983 NW2d 827 (2022). It is the government's burden to prove that an exception to the warrant requirement exists. *People v Reed*, 393 Mich 342, 362; 224 NW2d 867 (1975).[13]

## III. DISCUSSION

The majority opinion reaches a legally erroneous conclusion, largely because it accepts defendant's framing of the case at face value and interprets the case through this inaccurate lens. Latching on to defendant's argument, the majority opinion states that the dispositive issue in this case is whether the trooper could lawfully search defendant's vehicle under the automobile exception to the warrant requirement when he had probable cause to believe there was a small amount of marijuana in the vehicle, which would amount to a civil infraction. This is not the proper inquiry. Properly framed, the actual issue in this case is whether the trooper could lawfully search defendant's vehicle under the automobile exception to the warrant requirement when he had probable cause to believe that marijuana contraband would be found in the vehicle. The answer to this question is clearly and unequivocally yes.

---

[13] *Armstrong*, ___ Mich at ___; slip op at 5-6.

A.  THE AUTOMOBILE EXCEPTION TO THE SEARCH-WARRANT
REQUIREMENT ALLOWS AN OFFICER TO SEARCH A VEHICLE WHEN THE
OFFICER HAS PROBABLE CAUSE TO BELIEVE THAT THE VEHICLE
CONTAINS CONTRABAND *OR* EVIDENCE OF A CRIME

The automobile exception to the warrant requirement was first recognized a century ago in *Caroll v United States*,[14] which involved the search of an automobile for liquor transported in violation of the National Prohibition Act.  The Supreme Court of the United States held that "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant" so long as the government has probable cause for believing that the vehicle contains "contraband *or* illegal merchandise."[15]  After determining that the officers had probable cause to believe that illegal liquor was present in the defendants' vehicle, the Court affirmed their convictions.[16]  In doing so, the Court explained that "[t]he right to search and the validity of the seizure are not dependent on the right to arrest.  They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law."[17]

Later automobile-exception cases from the Supreme Court of the United States have involved cases where the defendant was suspected of a serious criminal offense.  The Court has stated that the automobile exception allows the search of a motor vehicle when "the

---

[14] *Carroll*, 267 US at 153-154.

[15] *Id*. (emphasis added).

[16] *Id*. at 162.

[17] *Id*. at 158-159.

police have probable cause to believe it contains evidence of a crime."[18]  However, the Supreme Court has repeatedly referred to the automobile exception as it did in *Carroll*, stating that "[t]he police may search an automobile and the containers within it where they have probable cause to believe contraband *or* evidence is contained [therein]."[19]

This Court has set forth this same principle.  In *Armstrong*,[20] this Court addressed whether the decriminalization by the MRTMA of possession of 2.5 ounces or less of marijuana supersedes the rule of *People v Kazmierczak*,[21] which held that "the smell of marijuana alone by a person qualified to know the odor may establish probable cause to search a motor vehicle, pursuant to the motor vehicle exception to the warrant requirement."  On the basis of the passage of the MRTMA, the Court of Appeals in *Armstrong* held that "the odor of marijuana is relevant to the totality of the circumstances

---

[18] *Colorado v Bannister*, 449 US 1, 2, 3; 101 S Ct 42; 66 L Ed 2d 1 (1980) (involving defendants who were suspected of stealing motor vehicle parts), citing *Carroll*, 267 US 132.

[19] *Acevedo*, 500 US at 580 (involving a defendant suspected of possession of marijuana) (emphasis added); see also *Florida v Harris*, 568 US 237, 243; 133 S Ct 1050; 185 L Ed 2d 61 (2013) (stating that a police officer has probable cause to conduct a search if the facts available create a reasonable belief that there is "contraband or evidence of a crime"); *Pennsylvania v Labron*, 518 US 938, 940; 116 S Ct 2485; 135 L Ed 2d 1031 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment . . . permits police to search the vehicle without more."); *United States v Ross*, 456 US 798, 807-808; 102 S Ct 2157; 72 L Ed 2d 572 (1982) (noting that the automobile exception applies if the police "have probable cause to believe that the vehicle contains contraband"); *Wyoming v Houghton*, 526 US 295, 300; 119 S Ct 1297; 143 L Ed 2d 408 (1999) (explaining that in *Carroll*, "the Court held that 'contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant' where probable cause exists"), quoting *Carroll*, 267 US at 153.

[20] *Armstrong*, ___ Mich at ___; slip op at 1.

[21] *Kazmierczak*, 461 Mich at 413.

9

test and can contribute to a probable cause determination, . . . but the smell of marijuana, by itself, does not give rise to probable cause unless it is combined with other factors that bolster the concern about illegal activity that may flow from the smell of marijuana."[22] Therefore, probable cause to conduct a search under the automobile exception may still exist when the smell of marijuana is combined with other suspicious facts, like a suspect "lying about his legal possession."[23]  This Court agreed with the Court of Appeals:

> [T]he *Kazmierzak* rule is no longer good law in light of the MRTMA.  Instead of a rule that the smell of marijuana alone may be sufficient to support a finding of probable cause, the appropriate rule is that the smell of marijuana is one factor that may play a role in the probable-cause determination. Because the officers in this case lacked probable cause, the automobile exception to the warrant requirement did not apply.[24]

Relevant to this case, this Court explained in *Armstrong* that "[p]robable cause means that there is a 'substantial basis for inferring a fair probability that contraband *or* evidence of a crime will be found in a particular place.' "[25]

But Michigan's appellate courts have not directly applied this principle to the issue presented in this case, which is whether the automobile exception applies to cases like this one where an officer has probable cause to believe the vehicle contains marijuana

---

[22] *Armstrong*, 344 Mich App at 300 (quotation marks omitted).

[23] *Id*. at 298, distinguishing *Moorman*, 331 Mich App at 487-488.

[24] *Armstrong*, ___ Mich at ___; slip op at 20.  I dissented in *Armstrong*, explaining that I was "not convinced that there are no remaining situations where the smell of marijuana coming from a vehicle could by itself provide 'a substantial basis for inferring a fair probability that contraband or evidence of a crime will be found' in the vehicle."  *Id*. at ___; slip op at 20-21 (ZAHRA, J., dissenting) (quotation marks and citation omitted).

[25] *Id*. at ___; slip op at 8 (opinion of the Court), quoting *Kazmierczak*, 461 Mich at 417-418 (quotation marks omitted; emphasis added).

contraband, even if the amount in question turns out to be a noncriminal amount.[26]  Other

jurisdictions have tackled this question, with most states concluding that police can search

a vehicle under the automobile exception if they have probable cause to believe the vehicle

contains marijuana contraband, regardless of the amount of marijuana suspected in the

vehicle.  In *Robinson v State*,[27] the Maryland Court of Appeals confronted a case involving

a state law that decriminalized the possession of less than 10 grams of marijuana.  Before

the passage of this law, the possession of less than 10 grams was a misdemeanor punishable

by jail time, but the law in question changed this, making the possession of such an amount

only a civil offense punishable by "participation in a drug education program, an

assessment for substance abuse disorder, possible substance abuse treatment, and" a

monetary fine.[28]  Despite this change, the Maryland Court of Appeals, in agreement with

the appellate courts of other jurisdictions, held that the odor of marijuana emanating from

a vehicle provides an officer probable cause to search the vehicle because "marijuana in

any amount remains contraband, notwithstanding the decriminalization of possession of

less than ten grams of marijuana[.]"[29]  "Simply put, decriminalization is not synonymous

with legalization, and possession of marijuana remains unlawful."[30]

---

[26] Our Court of Appeals has held that a "defendant's deception about the presence of marijuana in the vehicle would give rise to probable cause to believe that the amount possessed was greater than that permitted under the" Michigan Medical Marihuana Act, MCL 333.26421 *et seq*.  *Moorman*, 331 Mich App at 488.

[27] *Robinson v State*, 451 Md 94, 97; 152 A3d 661 (2017).

[28] *Id*. at 97-98.

[29] *Id*. at 99.

[30] *Id*.

In *State v Barclay*,[31] the Maine Supreme Judicial Court held that even though possession of marijuana in small amounts under state law could give rise to a civil violation, it remained contraband and the legitimate object of a search pursuant to the automobile exception. Similarly, in *State v Smalley*,[32] the Oregon Court of Appeals held that regardless of whether the police suspect a crime or a violation involving marijuana, the automobile exception applies if the police have probable cause to believe that a vehicle contains marijuana "contraband," which includes "anything that the law prohibits possessing." And in *People v Waxler*,[33] decided before California amended its marijuana laws, the California Court of Appeals reached the same result, holding that the automobile exception applied, even though possession of not more than an ounce of marijuana was an infraction punishable by a fine only, if the police had probable cause to believe that a vehicle contained "contraband or evidence of a crime."[34]

---

[31] *State v Barclay*, 398 A2d 794, 798 (Me, 1979).

[32] *State v Smalley*, 233 Or App 263, 270-271; 225 P3d 844 (2010) (explaining that the phrase "contraband or crime evidence" signals that the two are not identical and that "probable cause to believe in the presence of either could justify an automobile search").

[33] *People v Waxler*, 224 Cal App 4th 712, 715, 725; 168 Cal Rptr 3d 822 (2014) ("The automobile exception is not limited to situations where the officer smells or sees more than 28.5 grams of marijuana in the vehicle . . . ; the observation of any amount of marijuana—which is currently illegal to possess except as authorized by the [Compassionate Use Act]—establishes probable cause to search pursuant to the automobile exception."). *Waxler* was superseded by statute as stated in *People v Hall*, 57 Cal App 5th 946, 954-955; 271 Cal Rptr 3d 793 (2020).

[34] The Massachusetts Supreme Judicial Court, on the other hand, in *Commonwealth v Sheridan*, 470 Mass 752, 756-759, 762-763; 25 NE3d 875 (2015), held that because a state ballot initiative transformed the possession of one ounce or less of marijuana from criminal conduct to a civil infraction, a warrantless search of a vehicle under the automobile exception is only permissible if the police can establish probable cause to believe that a criminal amount of marijuana is present in the vehicle. The court agreed with the district

The reasoning from this caselaw from these various jurisdictions is sound and persuasive. It is entirely logical and consistent with the Fourth Amendment's requirements to conclude that an officer can search a vehicle under the automobile exception when he has probable cause to believe that the vehicle contains marijuana contraband; an officer need not have probable cause as to the exact amount of marijuana when no one in the vehicle can legally possess any amount of marijuana. The majority opinion fails to explain why this well-established principle is inapplicable in this case.

## B. APPLICATION

The Court today declines to extend the automobile exception to allow for a warrantless search of a vehicle when there is probable cause to believe there is evidence of a civil infraction. But in doing so, the majority opinion incorrectly assumes that the trooper only had probable cause to believe there was evidence of a civil infraction. Instead, the trooper had probable cause to believe he would find marijuana *contraband* in the vehicle. Because this Court and the Supreme Court of the United States have consistently held that an officer may search a vehicle under the automobile exception to the warrant requirement if the officer has probable cause to believe he will find contraband *or* evidence of a crime, the trooper's search of the vehicle was lawful.

As previously explained, the majority opinion incorrectly assumes the trooper *only* had probable cause to believe that he would find evidence of a civil infraction in the

court's determination that any amount of marijuana was "contraband" because persons cannot legally possess any amount of marijuana in Massachusetts, but in order for police officers to search the vehicle under the automobile exception, officers must have probable cause to believe that the vehicle contains a criminal amount of marijuana contraband. *Id*. at 756, 759-760.

vehicle, ignoring that the officer had probable cause to believe contraband would be found in the vehicle. There was more than enough evidence to establish probable cause to believe that the trooper would discover marijuana contraband in the vehicle. The smell of marijuana emanated from the car, which was occupied by two persons who could not legally possess *any* amount of marijuana.[35] After being asked if they possessed any marijuana, defendant and his passenger initially said no. However, the passenger admitted to possessing a "shake" of marijuana when asked a second time. And while the trooper testified that a "shake" was commonly understood to mean a "small amount of marijuana," the majority opinion wrongfully requires the trooper to believe the passenger regarding the amount of marijuana she possessed. This is especially true given the fact that she initially lied about having any marijuana in the first instance.[36] These facts, taken together, amount to probable cause to believe that the trooper would find marijuana contraband in the vehicle.

"Contraband" can be defined as "goods or merchandise whose importation, exportation, or *possession is forbidden* . . . ."[37] Here, defendant and his passenger were forbidden under the MRTMA from possessing *any* amount of marijuana. The fact that the MRTMA provides for the "forfeiture of the marihuana"[38] possessed by any person who is under 21 years of age provides further support that marijuana is contraband as to defendant

---

[35] MCL 333.27965(3).

[36] *Moorman*, 331 Mich App at 488.

[37] *Merriam-Webster's Collegiate Dictionary* (12th ed) (emphasis added).

[38] MCL 333.27965(3).

14

and his passenger.[39]  And contrary to the assertion of the majority opinion,[40] the Supreme Court of the United States has included items subject to civil forfeiture within the meaning of "contraband" under the Fourth Amendment.[41]

In *Florida v White*,[42] several months after officers observed the defendant using his car to deliver cocaine, the defendant was arrested at his workplace on unrelated charges. At that time, the arresting officers seized the defendant's car without securing a warrant because they believed that it was subject to forfeiture under the Florida Contraband Forfeiture Act.[43]  During a subsequent inventory search, the police discovered cocaine in the car, and the defendant was charged with a state drug violation.[44]  The defendant moved to suppress the evidence discovered during the search, arguing that the car's warrantless seizure violated the Fourth Amendment.[45]  The Supreme Court of the United States disagreed, holding that the Fourth Amendment does not require the police to obtain a

---

[39] See *White,* 526 US at 561.  Like the vehicle in *White* that was civil contraband and subject to forfeiture, the marijuana in this case is civil contraband and subject to forfeiture.

[40] The majority opinion states that it declines to extend the meaning of "contraband" to a civil infraction when the Supreme Court of the United States has not done so.  As already discussed, the Supreme Court of the United States has indeed done so.

[41] *White*, 526 US at 561.

[42] *Id*.

[43] *Id*. at 561-562.  The Florida Contraband Forfeiture Act "provides that certain forms of contraband, including motor vehicles used in violation of the Act's provisions, may be seized and potentially forfeited." *Id*. at 561.  Police "seized the vehicle solely because they believed that it was forfeitable under the Act." *Id*. at 561-562.

[44] *Id*. at 562.

[45] *Id*.

warrant before seizing an automobile from a public place when they have probable cause to believe that it is forfeitable contraband.[46] In so holding, the Supreme Court of the United States relied on the reasoning from *Carroll*:

> In *Carroll,* we held that when federal officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband. Our holding was rooted in federal law enforcement practice at the time of the adoption of the Fourth Amendment. Specifically, we looked to laws of the First, Second, and Fourth Congresses that authorized federal officers to conduct warrantless searches of ships and to seize concealed goods subject to duties. [*Carroll*, 267 US] at 150-151 (citing Act of July 31, 1789, §§ 24, 29, 1 Stat. 43; Act of Aug. 4, 1790, § 50, 1 Stat. 170; Act of Feb. 18, 1793, § 27, 1 Stat. 315; Act of Mar. 2, 1799, §§ 68–70, 1 Stat. 677, 678). These enactments led us to conclude that "contemporaneously with the adoption of the Fourth Amendment," Congress distinguished "the necessity for a search warrant between goods subject to forfeiture, when concealed in a dwelling house or similar place, and like goods in course of transportation and concealed in a movable vessel where they readily could be put out of reach of a search warrant." [*Carroll*, 267 US] at 151.

> The Florida Supreme Court recognized that under *Carroll,* the police could search respondent's car, without obtaining a warrant, if they had probable cause to believe that it contained contraband. The court, however, rejected the argument that the warrantless seizure of respondent's vehicle *itself* also was appropriate under *Carroll* and its progeny. It reasoned that "[t]here is a vast difference between permitting the immediate search of a movable automobile based on actual knowledge that it then contains contraband [and] the discretionary seizure of a citizen's automobile based upon a belief that it may have been used at some time in the past to assist in

---

[46] *Id*. at 561 ("In this case, we must decide whether the Fourth Amendment requires the police to obtain a warrant before seizing an automobile from a public place when they have probable cause to believe that it is forfeitable contraband. We hold that it does not."). Forfeitable contraband under the Act does not have to be an instrumentality used in the commission of a crime. For instance, the Act defines "[c]ontraband article" to include "[a]ny equipment, liquid or solid, which was being used, is being used, was attempted to be used, or intended to be used in violation of the beverage or tobacco laws of the state." Fla Stat 932.701(2)(a)(3). There are also administrative violations under the beverage and tobacco laws. See Fla Stat 561.29.

illegal activity." [*White v State*, 710 So 2d 949,] 953 (Fla, 1998). We disagree.

> The principles underlying the rule in *Carroll* and the founding-era statutes upon which they are based fully support the conclusion that the warrantless seizure of respondent's car did not violate the Fourth Amendment. Although, as the Florida Supreme Court observed, the police lacked probable cause to believe that respondent's car contained contraband, see [*id*.], they certainly had probable cause to believe that the vehicle *itself* was contraband under Florida law. Recognition of the need to seize readily movable contraband before it is spirited away undoubtedly underlies the early federal laws relied upon in *Carroll*. See [*Carroll*, 267 US] at 150–152; see also *California* v. *Carney,* 471 U.S. 386, 390[; 105 S Ct 2066; 85 L Ed 2d 406] (1985); *South Dakota* v. *Opperman*, 428 U.S. 364, 367[; 96 S Ct 3092; 49 L Ed 2d 1000] (1976). This need is equally weighty when the *automobile,* as opposed to its contents, is the contraband that the police seek to secure. Furthermore, the early federal statutes that we looked to in *Carroll*, like the Florida Contraband Forfeiture Act, authorized the warrantless seizure of *both* goods subject to duties *and* the ships upon which those goods were concealed.[47]

Relevant to this case, the *White* Court recognized that possession of an item subject to forfeiture under civil law can be contraband to support a probable-cause determination under the Fourth Amendment. Therefore, under *White*, because any amount of marijuana would be subject to civil forfeiture for defendant and his passenger, both under the age of 21, the trooper had probable cause to believe he would find marijuana contraband in the vehicle.

To bolster this conclusion even further, as set forth above, most states that have ruled on this issue have held that the automobile exception applies in cases like this one where an officer has probable cause to believe the vehicle contains marijuana contraband,

---

[47] *White*, 526 US at 563-565 (third and fourth alterations in original).

even if the amount turns out to be a noncriminal amount.[48]  This Court and the Supreme Court of the United States have consistently held that police may search a vehicle pursuant to the automobile exception if they have probable cause to believe that they will find contraband *or* evidence of a crime.[49]  Because the trooper had probable cause to believe that he would find contraband in the vehicle, the trooper lawfully searched the vehicle pursuant to the automobile exception to the Fourth Amendment's warrant requirement.

## IV. CONCLUSION

I dissent from the majority opinion's holding that "[i]n the context of marijuana, . . . a police officer must have probable cause to believe an automobile contains evidence of possession of a criminal amount of marijuana or another criminal offense to conduct a warrantless search under the automobile exception."  The result of the majority opinion's holding is that probable cause to believe there is evidence of the presence of

---

[48] *Robinson*, 451 Md at 97, 99; *Barclay*, 398 A2d at 798; *Smalley*, 233 Or App at 270-271; *Waxler*, 224 Cal App 4th at 725; but see *Sheridan*, 470 Mass at 757-758.

The majority opinion incorrectly states that its holding today "is also consistent with the rule adopted by numerous other jurisdictions that have decriminalized or legalized marijuana possession."  In *People v Redmond*, 2024 IL 129201, ¶ 54; 248 NE3d 1026 (2024), *State v Torgerson*, 995 NW2d 164, 175 (Minn, 2023), and *Commonwealth v Barr*, 671 Pa 275, 307; 266 A3d 25 (2021), the officers searched the defendants' vehicles under the automobile exception, looking for marijuana, solely based on the fact that the vehicles smelled of marijuana.  Those courts held that after the legalization of marijuana, this is not enough to search a vehicle under the automobile exception.  The above cases cited by the majority opinion support this Court's holding in *Armstrong*, ___ Mich at ___; slip op at 2, 19-20, not this case.

[49] *Armstrong*, ___ Mich at ___; slip op at 14, quoting *Kazmierczak*, 461 Mich at 417-418; *Acevedo*, 500 US at 580; *Carroll*, 267 US at 154 (stating that the police can search under the automobile exception if they have probable cause to believe that a vehicle is carrying "contraband or illegal merchandise").

"contraband" is no longer enough to conduct a search under the automobile exception; officers must have probable cause to believe there is "evidence of a crime," and nothing less will suffice. This is not what the Fourth Amendment requires. Rather, the automobile exception to the warrant requirement requires an officer to have probable cause to believe that the vehicle contains contraband *or* evidence of a crime. In holding otherwise, this Court ignores over 100 years of precedent from the Supreme Court of the United States that has been followed by this Court and incorporated into Michigan's jurisprudence until today.[50]

The trooper here relied on more than just the odor of marijuana before searching the vehicle. The trooper also relied on the following: (1) the trooper smelled the odor of marijuana upon approaching the vehicle; (2) both the driver and passenger were under the age of 21, so the trooper knew no one in the vehicle could legally possess any amount of marijuana; (3) the driver and the passenger initially lied about having marijuana; and (4) then the passenger admitted to having some marijuana in the vehicle. These facts certainly gave the trooper probable cause to believe that the vehicle contained marijuana contraband. I would affirm the judgment of the Court of Appeals.

> Brian K. Zahra
> Richard H. Bernstein

---

[50] *Carroll*, 267 US at 154 (noting that police can search under the automobile exception if they have probable cause to believe a vehicle is carrying "contraband or illegal merchandise"); *Acevedo*, 500 US at 580; *Armstrong*, ___ Mich at ___; slip op at 14, quoting *Kazmierczak*, 461 Mich at 417-418; see also *People v Thomson*, ___ Mich ___; 27 NW3d 115, 115 (2025) (explaining that probable cause requires "that contraband or evidence of a crime will be found in a particular place") (quotation marks and citation omitted).